UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN A. MACIS,

    Plaintiff,                                          Hon. Ellen S. Carmody

v.                                                       Case No. 1:04-CV-0637

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On January 5, 2004, the parties consented to proceed before the undersigned for all further proceedings, including an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Wendell A. Miles referred resolution of this matter to this Court. (Dkt. #9).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 60 years of age at the time of the ALJ's decision. (Tr. 14). He earned a General Educational Development (GED) diploma and was later trained as a plumbing apprentice. (Tr. 91). Plaintiff worked previously as a plumbing cost estimator. (Tr. 101-08).

Plaintiff applied for benefits on June 14, 2002, alleging that he had been disabled since November 30, 2001, due to the effects of a brain aneurysm. (Tr. 63-65, 85). His application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 26-62). On December 4, 2003, Plaintiff appeared before ALJ Bonny Barezky, with testimony being offered by Plaintiff. (Tr. 188-202). In a written decision dated February 23, 2004, ALJ Barezky determined that Plaintiff was not disabled as defined by the Act. (Tr. 14-17). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 3-5). Plaintiff subsequently appealed the matter in this Court pursuant to 42 U.S.C. § 405(g).

## MEDICAL HISTORY

On April 18, 1997, Plaintiff underwent an emergency right frontal craniotomy, performed by Dr. Murali Guthikonda, to treat a right carotid brain aneurysm. (Tr. 157-59).

On May 7, 1997, Plaintiff was examined by Dr. Guthikonda. (Tr. 161-62). The doctor observed that Plaintiff "continues to have ptosis of the right eye and also a complete

ophthalmoplegia." No other neurological deficits were observed and an examination of Plaintiff's extremities was unremarkable. *Id.*

On November 6, 1998, Plaintiff was examined by Dr. Thomas Malec. (Tr. 128). Plaintiff reported that he had been experiencing double vision which had increased in severity following his surgery. The examination also revealed that Plaintiff was experiencing ptosis of the right upper eyelid. With respect to this finding the doctor reported that, "[t]his indicates that [Plaintiff] now has in addition to the sixth cranial nerve problem, a third cranial nerve paresis and I also detected a fourth cranial nerve weakness on the right and he also has mild optic atrophy that accounts for his slight decrease in vision in the right eye." Dr. Malec characterized Plaintiff's vision impairment as a "very complicated problem" that "probably can't be corrected by surgery." *Id.*

On April 21, 1999, Plaintiff was examined by Dr. Guthikonda. (Tr. 159). Plaintiff reported that he was continuing to experience problems with his right eye. The doctor observed that Plaintiff was experiencing ptosis and demonstrated "a mild degree of intorsion indicating partial fourth cranial nerve recovery." The examination also revealed that Plaintiff's right eye "deviates medially indicating an aberrant regeneration." Dr. Guthikonda concluded that "overall [Plaintiff] has not regained his function of the cranial nerves including III and IV, and unfortunately I do not believe there is anything that can be done at this stage given the duration of the residual neurological findings in regard to the ocular motility." *Id.*

On November 26, 2003, ophthalmologist Dr. Kenneth Otto, who had been treating Plaintiff since August 18, 2000, authored a report regarding Plaintiff's condition. (Tr. 187). The doctor reported that Plaintiff suffers from "right diplopia, ptosis OD, third nerve palsy OD, and optic atrophy OD," as well as "persistent double vision." Dr. Otto reported that Plaintiff "can control the

4

double vision through the use of an eye patch, however, he then suffers loss of depth perception." The doctor concluded that Plaintiff "should not work around dangerous machinery or at heights." He further noted that Plaintiff "will have difficulty climbing or walking on uneven surfaces." Dr. Otto concluded that Plaintiff's restrictions "will be permanent." *Id.*

At the administrative hearing Plaintiff testified that he experiences double vision "all the time." (Tr. 193). He reported that while he can control his double vision through use of an eye patch, doing so impairs his depth perception. Plaintiff reported that as a result "even surfaces where there's a single step down, I seem to be stumbling, most of the time." *Id.* As for daily activities, Plaintiff testified that he rakes leaves, vacuums, cooks, and helps clean around the house. (Tr. 200).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

B. <u>The ALJ's Decision</u>

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) right diplopia, (2) ptosis OD, (3) third nerve palsy OD, and (4) optic atrophy OD. (Tr. 16). However, the ALJ further determined that these impairments, neither alone nor in combination, satisfied the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* Finding that Plaintiff could, despite his impairments, perform his past relevant work, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. *Id.*

### 1. The ALJ's Decision is Not Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning

capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's RFC, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following restrictions: (1) he cannot perform duties requiring binocular vision or depth perception, (2) he cannot work at heights or around dangerous machinery, and (3) he cannot perform any climbing activities. (Tr. 16). After reviewing the relevant medical evidence, the Court finds that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence. Without benefit of input from a vocational expert, the ALJ concluded that Plaintiff's RFC did not preclude the performance of his past relevant work as an industrial cost estimator. (Tr. 16).

The ALJ based this determination entirely on Plaintiff's responses to a Work History Report[2] completed on July 18, 2002. (Tr. 101-08). In this report, Plaintiff identified the six positions he held during the time period from May 1972 through January 2002. (Tr. 101). Specifically, the ALJ concluded that Plaintiff retained the ability to perform the second of these six jobs, which he performed from January 1994 through April 1997. (Tr. 15).

The first of these six jobs lasted from May 1972 through July 1993. *Id.* As part of this particular job Plaintiff was required to perform cost estimates of projects, as well as help install plumbing systems. (Tr. 102). These duties required him to lift as much as 50 pounds. *Id.* With respect to the remaining five positions, (including the one which the ALJ concluded Plaintiff could

---

[2] A Work History Report is a form issued by the Social Security Administration and used by claimants to describe the relevant work-related activities that were required for each of his previous jobs

still perform) Plaintiff described them in identical terms: he read blue prints and performed cost estimates for projects. (Tr. 103-07). Plaintiff also reported, however, that these positions required that he visit the work site and "climb ladders or steps" as part of the cost estimation process. (Tr. 108). As the ALJ acknowledged, however, Plaintiff's vision problems preclude the performance of such activities. Thus, Plaintiff's responses to this Work History Report fail to support the ALJ's conclusion that Plaintiff retained the ability to perform his past relevant work.

At the administrative hearing, the ALJ never even bothered to ask Plaintiff about the particular job which she subsequently concluded he retained the ability to perform. Instead, the ALJ limited her questions to the work which Plaintiff attempted to perform following his brain aneurysm surgery. (Tr. 194-99). To the extent that such testimony is relevant, however, Plaintiff reiterated that his work as a cost estimator required him to actually visit the project site and climb ladders and scaffolds, activities which the ALJ acknowledged Plaintiff cannot perform. *Id.* Thus, Plaintiff's testimony at the administrative hearing likewise fails to support the ALJ's decision.

In sum, the Court finds that the ALJ's determination that Plaintiff is able to perform his past relevant work as a cost estimator is not supported by substantial evidence. While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Sec'y of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and immediately award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, there does not exist compelling evidence that Plaintiff is disabled. The Commissioner's decision must, therefore, be reversed and this matter remanded for further factual findings, including

8

but not necessarily limited to, a determination of the number of jobs (if any) which Plaintiff can perform consistent with the limitations identified herein.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision fails to adhere to the proper legal standards and is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.

Date: March 9, 2006                                           /s/ Ellen S. Carmody
                                                                                      ELLEN S. CARMODY
                                                                                      United States Magistrate Judge